## GUSTAVE KAFKA v. WATSON P. DAVIDSON.[1]

### January 19, 1917.

### Nos. 20,189—(187).

**Eminent domain — apportionment of award between owner and tenants.**

1. Where the city of St. Paul condemns part of a lot for street purposes, upon which there is a building occupied by tenants, the award of damages may be made in gross and be apportioned thereafter between the various parties in interest according to their interests.

**Same — appeal from award.**

2. All parties entitled to a share of the award had the right to appeal therefrom and have the damages reassessed if dissatisfied with the amount thereof, and all parties are bound and concluded by the award as fixed and determined in the condemnation proceedings.

**Same — action to recover share of award.**

3. Any party entitled to share in the award may bring an action for his share against any other party to whom such share has been paid.

[1] Reported in 160 N. W. 1021.

**Same — proof that plaintiff was not entitled to share in award.**

4. To bar a party from sharing in the award on the ground that it had been determined in the condemnation proceedings that he was entitled to no part thereof, it must be shown affirmatively that the question was in fact considered and determined in such proceedings. There is no such showing in this case.

**Same — leasehold estate — measure of damages.**

5. Where a leasehold estate is taken, the measure of damages is the fair market value of the estate so taken. If only a part be taken the measure of damages is the difference between the value of the entire estate and the value of the part not taken.

**Untenantable premises — liability to pay rent.**

6. By removing the front wall of the building, the city made plaintiff's premises untenantable, and when he vacated in consequence thereof his obligation to pay rent ceased and his lease terminated.

**Measure of damages to tenant.**

7. As plaintiff's lease was terminable by a notice of 60 days and the payment of $1,500, his damages could not exceed that sum together with the excess of rental value over the rent reserved in the lease for such period of 60 days.

**Competent evidence.**

8. It was competent for plaintiff to prove that the market value of the premises for use as a cigar store had been enhanced by their long-continued use for that purpose; but it was not competent to prove the amount of his profits, the loss of profits, the depreciation of fixtures, or the expense of removal.

**Plaintiff's share of award — proof.**

9. Plaintiff is entitled only to the proportional part of the award which the amount of his damage bears to the amount of all the damage to the property, and to recover must show the amount of his own damage, and that defendant has received more than defendant's share of the award.

**Duty of landlord to repair.**

10. The lessors assumed no duty to make repairs, and defendant owed no duty to plaintiff to replace the front wall of the building.

**Exclusion of offer error.**

11. An offer to prove facts which if proven would have established that the leasehold had a rental value in excess of the rental payable under the lease was erroneously excluded.

Action in the district court for Ramsey county to recover $19,400.

The facts are stated in the opinion. The case was tried before Michael, J., who at the close of the testimony granted defendant's motion for a directed verdict. From an order denying his motion for a new trial, plaintiff appealed. Reversed.

*Durment, Moore, Oppenheimer & Houpt,* for appellant.

*B. H. Schriber,* for respondent.

TAYLOR, C.

In February, 1911, the owners of a building at the southwesterly corner of Fourth and Robert streets in the city of St. Paul leased the corner store room therein to plaintiff for a term beginning February 15, 1911, and ending August 31, 1917, at a rental of $165 per month. The room was 24 feet in width on the Robert street front and 26 feet in depth, and was occupied by plaintiff as a cigar store. The lease reserved to the lessors the right to terminate it in case they should sell the land or give a ground lease thereof for a term of not less than 25 years, on giving plaintiff six months' notice of their intention to terminate it and paying him the sum of $1,500. On November 25, 1911, the owners leased the northerly 50 feet of lots 1 and 2 of block 25, St. Paul proper, which included the building in question, to defendant for a term of 100 years, "subject to any existing lease with present tenants." Thereafter defendant gave notice of his intention to terminate plaintiff's lease, but plaintiff and defendant subsequently made an agreement whereby the notice was withdrawn and the lease was modified by giving defendant the "absolute right to terminate the lease at any time on giving" plaintiff 60-days' notice in writing of his intention so to do and paying plaintiff the sum of $1,500 provided for in the lease.

In proceedings for the widening of Robert street, the city of St. Paul condemned a strip of land 20 feet in width along the westerly side of that street and across the property embraced in the ground lease to defendant, and took all of plaintiff's store room except a strip 6 feet in width across the rear end thereof. The damages for taking the strip 20 feet wide across the entire 50 feet embraced in the ground lease were assessed at the sum of $25,200; the benefits to the remainder of the tract resulting from the widening of the street were assessed at the sum of 13,692, and the sum of $11,508, being the excess of the damages over

and above the benefits, was awarded to the owners of the property. The assessment was confirmed September 25, 1913. By a previous contract the fee owners had assigned to defendant any excess of the damages over the benefits, and the net amount awarded to the owners was paid to him by the city.

Plaintiff in proper season applied to the board of public works for a separate award to himself of the damages which he claimed to have sustained, but no separate allowance was made to him, and the award was confirmed without being apportioned between the various parties interested in the property. After it had been confirmed plaintiff appealed to the district court. That court rendered judgment confirming the award, and the judgment so rendered was affirmed by this court upon the ground that the award could be made in gross and be apportioned thereafter "between the various parties according to their interests." State v. District Court of Ramsey County, 128 Minn. 432, 151 N. W. 144.

The city gave the property owners until June 1, 1914, in which to vacate the land taken by the city and subsequently extended the time until June 18, 1914. On June 30, 1914, the city entered upon the premises in question, and removed that portion of the building situated upon the 20-foot strip which had been condemned, leaving the remainder of the building without any front wall. Defendant did not replace the front wall nor remove the remainder of the building, and several weeks later the city declared the remainder of the building unsafe and removed it.

Plaintiff vacated the 20 feet of his room taken by the city on June 18, 1914, and vacated the remaining six feet thereof when the city removed the front wall from the building on June 30. He paid the rent for the entire premises until June 18 and a proportional part thereof for the 6-foot strip for the remainder of that month. No rent was paid or demanded thereafter.

In April, 1915, plaintiff brought this action to recover damages for the taking of his leasehold, and also to recover several other alleged claims which he asserted against defendant.

The gross amount of damages to the entire 50 feet embraced in the ground lease having been fixed in the assessment proceedings at the

sum of $25,200, it was stipulated for the purpose of this trial that $15,200 thereof should be apportioned as the damages to the northerly 24 feet of such tract which included plaintiff's premises, and that $10,000 thereof should be apportioned as the damages to the southerly 26 feet of such tract. At the close of the evidence the trial court directed a verdict for defendant, and plaintiff appealed from an order denying a new trial.

The condemnation proceedings were in all respects regular so far as the record discloses, and the board of public works had jurisdiction to make the assessments and awards involved herein. Neither party questions this. The proceedings were in rem and all parties having interests in the property were bound and concluded by the determination made therein of the amount of damages to the property, but the amount so fixed was assessed in gross, and any party entitled to a share thereof could bring an action for his share against any other party to whom such share had been paid. State v. District Court of Ramsey County, 128 Minn. 432, 151 N. W. 144; Eyre v. City of Faribault, 121 Minn. 233, 141 N. W. 170; Smith v. City of St. Paul, 65 Minn. 295, 68 N. W. 32.

Defendant contends at the outset, that the board of public works determined that plaintiff was not entitled to any damages, and that he is concluded by such determination. If the record disclosed that the board had made such determination, it may be conceded that plaintiff would be concluded thereby. State v. District Court of Ramsey County, 95 Minn. 70, 103 N. W. 744, and cases cited therein. But the record does not bear out defendant's contention. The board made an award in gross for the damages to the northerly 50 feet of lots 1 and 2, being the tract embraced in the ground lease. Plaintiff applied for a separate award to himself for his damages. The board made no separate award, but duly confirmed the award in gross, and State v. District Court of Ramsey County, 128 Minn. 432, 151 N. W. 144, held that in doing so they acted within the power conferred upon them by the city charter. Whether plaintiff is entitled to share in such award was not determined so far as the record shows. As the decision made by the board did not necessarily involve that question, there must be affirmative proof that the question was in fact determined, before such decision can operate to bar plaintiff from subsequently claiming a part of the award

There is no such proof. The fact that the board made a few separate awards to tenants of certain pieces of property not here involved, cannot be held as proving that, where they made an award in gross without referring to the tenants at all, they had determined that the tenants had no interest therein.

Plaintiff contends that the trial court adopted an incorrect rule for measuring his damages, and we think this contention well founded.

The court took the position that, as the award stood in place of the land taken, it belonged to the owners of the land; that plaintiff was entitled to no more than the income from the award during the remaining term of his lease less the rentals to be paid by him during such remaining term; and that as the interest upon the award at the legal rate of six per cent per annum would be less than such rentals he had received full compensation by being released from the payment of the rentals. The court apparently adopted the rule which was applied in McAllister v. Reel, 53 Mo. App. 81. But we do not understand that case to hold that the interest theory is the proper rule in ordinary cases. That case seems to have proceeded upon the theory that the parties should have procured an apportionment of the award by the commissioners which they had failed to do, and that the facts proven were not sufficient to enable the court to apply the proper rule. The court [page 86] said: "This method of computation is only applicable to the particular facts of this case."

Where a leasehold estate is taken, it is well settled that the measure of damages is the fair market value of the estate so taken; or, if only a part thereof be taken, the measure of damages is the difference between the fair market value of the entire leasehold estate and the fair market value of the portion thereof not taken. King v. Minneapolis U. Ry. Co. 32 Minn. 224, 20 N. W. 135; Corrigan v. City of Chicago, 144 Ill. 537, 33 N. E. 746, 21 L.R.A. 212; Lawrence v. Boston, 119 Mass. 126; Mayor of Baltimore v. Rice, 73 Md. 307, 21 Atl. 181; Pennsylvania R. Co. v. Eby, 107 Pa. St. 166; Bales v. Wichita M. V. R. Co. 92 Kan. 771, 141 Pac. 1009, L.R.A. 1916C, 1090; Kishlar v. Southern P. Ry. Co. 134 Cal. 636, 66 Pac. 848; Seattle & M. Ry. Co. v. Scheike, 3 Wash. 625, 29 Pac. 217, 30 Pac. 503.

In the instant case the action of the city rendered the premises un-

tenantable, and when plaintiff vacated in consequence thereof his obligation to pay rent ceased by virtue of section 6810, G. S. 1913. That fact differentiates this case from cases governed by the common-law rule that a tenant must pay rent for the full term, although compelled to vacate the premises because they had become untenantable. If plaintiff had made a bad bargain, and the fair rental value of the premises was less than the rent he had agreed to pay, he was released therefrom by the statute and the owners had no recourse against him, and in such case he clearly would have sustained no damage. But if he had made a good bargain and the fair rental value of the premises was more than the rent he had agreed to pay, he did sustain damage. The measure of his damage is the amount which his leasehold estate, taken subject to the terms and provisions of the lease, would bring in the market at a fair sale, when one party wanted to sell and the other wanted to buy. In other words, he was entitled to the fair market value of his leasehold estate. As his estate could be terminated at any time by a notice of 60 days and the payment of the sum of $1,500, it is obvious that the amount of his recovery cannot in any event exceed such sum of $1,500 together with a proper allowance for any excess of the fair rental value of the premises over and above the rent reserved by the lease for a period of 60 days.

In view of questions raised at the trial, it may be proper to remark that it was competent for plaintiff to prove that the market value of the premises for use as a cigar and tobacco store had been enhanced by their long-continued use for that purpose, but that it was not competent to prove the amount of profits, the loss of profits, the depreciation of fixtures or the expense of removal.

Plaintiff seems to have proceeded upon the theory that the award of damages made in the condemnation proceedings was not binding upon him herein, and that he was entitled to recover from defendant whatever sum the jury might fix as the amount of his damages, regardless of the award made in such proceedings and of the rights of other parties therein. The decision in State v. District Court of Ramsey County, supra, held, in effect, that plaintiff as well as defendant could have procured a reassessment of the damages awarded in the condemnation proceedings, if dissatisfied therewith; that he as well as defendant is

concluded by the award made therein; and that he is only entitled to the share of such award which represents his previous interest in the property taken.

The interests of the various parties entitled to share in the award not having been determined as between each other, each is entitled to the proportional part of the award which the amount of his damage bears to the amount of all the damage to the property. In order to recover from defendant it was necessary for plaintiff to show the amount of his own damage, and also that defendant had received more than his proportional share of the award. The amount which plaintiff can recover from defendant is limited to the amount, if any, which defendant has received in excess of his own proportional share.

Plaintiff made a demand that defendant replace the front wall of the building so that plaintiff could use, as a cigar store, the remaining six feet of his premises not taken by the city. Plaintiff's lease did not impose upon the lessors any duty to make repairs and defendant was under no obligation to replace the wall. Keegan v. G. Heileman Brewing Co. 129 Minn. 496, 152 N. W. 877. Plaintiff also claimed that his store front had been put in by himself and that he was entitled to the amount of compensation allowed for taking the front wall of the building for that reason. The wall by whomsoever constructed became a part of the building and belonged to the owners of the building, not to the tenant.

Plaintiff offered to prove that the rental value of that portion of his room taken by the city was $6 per square foot per year. The proffered evidence was excluded and its exclusion is assigned as error. If plaintiff had established the fact which he offered to prove, he would have established a greater rental value than the rental payable under his lease, and it would have followed that he had sustained damage for which he was entitled to compensation. The bearing of the proffered evidence upon this phase of the case was not called to the attention of the trial court, as it was offered in connection with plaintiff's attempt to prove one of his several unfounded claims, and it was not admissible for the purpose for which it was apparently offered. But it tended to prove his one meritorious claim, and we think should have been admitted for that purpose. We think that plaintiff should be given an

opportunity to prove, if he can, that his leasehold had a rental value in excess of the rental payable under the lease. If he establishes that his leasehold had a market value, he is entitled to the proportional part of the award represented by such market value.

Order reversed.